GUSTAV SCHAEFER vs. JOHN W. STRIEDER.

Worcester.    October 4, 1909. — October 26, 1909.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Frauds, Statute of.    Sale.*

An oral contract, that, if the plaintiff will invest a certain amount of money in the stock of a certain corporation, on all the property of which the defendant holds a mortgage, the defendant, in case the plaintiff afterwards is dissatisfied and wants his money back, will give it to him on thirty days' notice, is not necessarily as matter of law a contract for the sale of goods, wares or merchandise by the plaintiff to the defendant under R. L. c. 74, § 5.

A qualified sale by the defendant to the plaintiff of stock in a certain corporation revocable by the plaintiff on thirty days' notice, after which the plaintiff may return the stock to the defendant and have his money back, is not a contract for the sale of property from the plaintiff to the defendant, under R. L. c. 74, § 5.

An oral contract, by which the defendant, who had a large personal interest in the business of a certain corporation, promised the plaintiff that, if he would purchase from the corporation through the defendant as its agent stock of the corporation to a certain amount, in case the plaintiff afterwards was dissatisfied, the defendant individually on thirty days' notice would pay to the plaintiff upon the rescission of the contract the amount of the money he thus had invested, whether or not it would be held to be within any other part of the statute of frauds, is not a contract by the plaintiff to sell goods, wares or merchandise to the defendant under R. L. c. 74, § 5.

CONTRACT for the sum of $1,950, which the plaintiff alleged that he paid for two thousand shares of the stock of the West Side Sumatra Tobacco Company upon the alleged promise of the defendant to pay the plaintiff that sum if at any time thereafter the plaintiff should become dissatisfied with the stock or should want his money, provided the plaintiff should give the defendant one month's notice thereof.    Writ dated June 24, 1907.

The answer contained a general denial, and set up the defense of R. L. c. 74, § 5, in the language quoted in the opinion.

In the Superior Court the case was tried before *Gaskill*, J., who refused to make the rulings requested by the defendant which are stated in the opinion, and submitted the case to the jury.    The jury returned a verdict for the plaintiff in the sum of $2,241.37 ; and the defendant alleged exceptions.

*C. H. Gilmore,* for the defendant.

*E. J. McMahon,* for the plaintiff.

KNOWLTON, C. J.   There was uncontradicted evidence from the plaintiff and the plaintiff's wife that the defendant induced the plaintiff to invest in stock of the West Side Sumatra Tobacco Company, a corporation, to the amount of $2,000, upon the defendant's promise that if he was dissatisfied or wanted his money at any time, the defendant would give it back to him. This promise was testified to as having been made at different times in slightly varying language, the final arrangement being that, if the plaintiff was dissatisfied or wanted his money, he should give the defendant thirty days' notice and he could have it.   The only defense that was relied upon at the trial or argued before us is founded upon a clause of the defendant's answer, averring that, if the defendant made the contract set out in the declaration, it " was a contract for the sale of goods, wares or merchandise for the price or value of $50 or more, and that the defendant did not accept or receive any part thereof, . . . or make or sign any note or memorandum in writing of said bargain or contract," etc.   There was evidence that the defendant had a mortgage of all the property of this corporation, which he afterwards foreclosed, and there was also evidence that he sent the plaintiff $50, representing it to be a dividend declared on the stock, when in fact there had been no dividend, and the plaintiff contended that this was sent to give the plaintiff confidence in the stock, and perhaps with a view to induce others to buy stock.   The defendant offered no evidence.   He asked the judge to instruct the jury that the plaintiff could not recover, because the agreement sued on was without consideration, and because it was in violation of R. L. c. 74, § 5, as there was no agreement in writing, or other compliance with the provisions of this statute.   The case was submitted to the jury upon instructions which do not appear in the record, and which are not excepted to.

It is plain that there was a sufficient consideration for the agreement, and no argument was addressed to us by the defendant on this part of the case.   The only question is whether, upon the evidence, the jury were bound to find that the agreement was a contract for the sale of goods, wares and merchandise, within

the language of the statute of frauds. If in any view of the evidence they could find otherwise, the exceptions must be overruled.

Although the note and check which the plaintiff gave for the stock were payable to the tobacco company, the jury well might have believed, from the conduct of the defendant and from such of his relations to the company as appeared in evidence, that the stock belonged to him, and that he was the principal in the whole transaction. If he was, they might also find that the contract was for a qualified sale of the stock, which was revocable by the plaintiff upon the conditions stated, so that he might at any time, under the original agreement, have his money back and return the stock. Such an agreement would not be a contract for the sale of property from the plaintiff to the defendant, but would be within the decision in *Williams* v. *Burgess*, 10 A. & E. 499, and other similar cases.

In *Corey* v. *Woodin*, 195 Mass. 464, a similar oral contract was before the court, and, without discussion of the statute of frauds, it was assumed both by counsel and the court that it was enforceable.

If the sale of stock was by the tobacco company through the defendant as its agent, the jury might still find that the contract was only for a qualified sale, and that the plaintiff had a right under it to rescind the sale and have back his money. They might also find that the defendant, while acting as agent for the company in selling the stock, had a large personal interest in the business, and that, in promising to pay back the plaintiff's money upon thirty days' notice if the plaintiff was dissatisfied, he assumed and was understood to bind himself as an individual, and that in this way he made an independent personal contract, in the nature of a guaranty of the company's principal contract, that, upon the rescission of the contract, the money should be paid back. Upon such a finding the plaintiff could not be precluded from recovery under that part of the statute of frauds which was before the court, however it might have been under other pleadings and different requests for rulings. There may be other possible views of the evidence which would have left the contract an independent undertaking of the defendant, other than an agreement for the purchase of property by the defendant from the plaintiff.

The case of *Boardman* v. *Cutter*, 128 Mass. 388, relied on by the defendant, is materially different. The parties were considering taking stock in a proposed corporation that had not been formed. The defendant said, " You take the stock, and any time you want your money, I will take your stock, and pay you par for it, barring interest." The corporation was afterwards formed and the plaintiff took the stock. When he undertook to enforce the contract against the defendant, the court held that the substantive part of the agreement was to take this stock as a purchase and pay the stated price for it, and that it was within the statute of frauds. The language used in the present case, taken in connection with all the other facts and circumstances, is capable of a different construction.

*Exceptions overruled.*