MARY M. GRIFFIN, APPELLEE, V. BANKERS REALTY INVEST-
MENT COMPANY, APPELLANT.

FILED DECEMBER 23, 1920.   No. 21190.

1. **Corporations:** SALE OF STOCK: CONTRACT. A contract providing for
   sale which contains an agreement to repurchase this stock is one
   and the same transaction, and it is *held* as constituting but a
   single and original contract.

2. **Statute of Frauds:** CONTRACT: PERFORMANCE. "The sale and delivery
   of stock and payment of the price, under a contract whereby the
   seller agreed to repurchase at the buyer's option, constituted an
   entire transaction which was sufficiently performed to take it out
   of the statute of frauds, relating to contracts for sale of goods,
   though the agreement to repurchase was oral." *Hankwitz v. Bar-
   rett*, 128 N. W. 430 (143 Wis. 639).

3. ————: ORIGINAL CONTRACT. "If an officer of a corporation orally
   promises a prospective purchaser of the corporate stock to repay
   the purchase price at any time and the purchaser acts upon the
   promise, the agreement is an original contract, and is not within
   the statute of frauds. The promisor does not thereby agree to
   answer for the debt, default or misdoings of another person, nor
   does he agree to purchase goods, wares, merchandise or things in
   action." *Trenholm v. Kloepper*, 88 Neb. 236.

4. **Corporations:** CONTRACT: VALIDITY. "A contract with a corporation
   by which it sells certain of its shares of stock and agrees to re-
   purchase the same upon the happening of a certain specified event,
   is not *ultra vires*; and for a breach thereof the purchaser may
   recover of the corporation the amount agreed upon as the price of
   such repurchase." *Fremont Carriage Mfg. Co. v. Thomsen*, 65
   Neb. 370.

5. ————: ————: PERFORMANCE. Where a seller of stock under a
   contract of purchase agreed to repurchase the same for the cor
   poration and to pay therefor the same price, the purchaser must,
   as a condition precedent to the right to compel the corporation
   to repurchase, perform all the concurrent things necessary for
   the redelivery to the corporation.

6. ————: ————: DEFENSE. Defendant cannot be heard to say that
   the sale is valid so far as the contract for purchase of stock is
   concerned and void so far as repurchase is concerned, since the
   entire contract is one and indivisible.

7. Contracts: CONSTRUCTION. Where the parties entered into an oral contract to repurchase the stock so issued and in pursuance of .this contract did repurchase three hundred dollars worth of the same, such action by the parties places their own construction upon the meaning of the contract, and the meaning the parties so give to their own contract will be followed by the court.

8. Corporations: CONTRACT: DEFENSE. A corporation cannot be heard in retaining the fruits of an unauthorized contract to advance the defense of *ultra vires* when sued on the contract, especially when the contract is an entirety and indivisible. Then every proposition therein contained must stand or fall together.

9. Evidence: SUBSCRIPTION FOR STOCK: INDUCEMENT. When an agent resorts to artifice and deceit as an inducement to one to subscribe for stock in a corporation, then evidence is admissible to show what it was that induced the party to subscribe for the stock. *Fairbanks, Morse & Co. v. Burgert*, 81 Neb. 465; *Barnett v. Pratt*, 37 Neb. 349; *Norman v. Waite*, 30 Neb. 302.

10. Statute of Frauds: PAROL CONTRACT. The statute of frauds can only be invoked to avoid an oral contract in case one is free from deceit and false representations.

11. Corporations: SUBSCRIPTION FOR STOCK: RESCISSION. When one is induced by 'misrepresentations to subscribe for stock by a corporation, he is entitled to a rescission of the contract in the same manner and to the same extent as between two natural persons.

APPEAL from the district court for Douglas county: CHARLES LESLIE, JUDGE. *Affirmed*.

*Isidor Ziegler*, for appellant.

*Sutton, McKenzie, Cox & Harris* and *Ralph E. Weaverling*, contra.

ALDRICH, J.

This is a law action. On August 11, 1915, Mary M. Griffin, plaintiff herein, purchased from defendant, Bankers Realty Investment Company, 1,000 shares preferred capital stock of defendant at $1.20 a share. Also on December 27, 1917, she purchased 50 shares more at $1.20 a share.

In paragraph two of plaintiff's petition she alleges as follows: "That on or about the 12th day of August, 1915, the defendant, by and through its agent Smith,

Griffin v. Bankers Realty Investment Co.

entered into an oral contract and agreement with the plaintiff, whereby it agreed with the plaintiff that the plaintiff was to purchase from the defendant a certificate of stock in said defendant company for the sum of $1,200, and the said defendant on its part agreed that, if the plaintiff should at any time thereafter, within a period of four years, desire to return said stock to the said defendant, the said defendant would pay to plaintiff, upon demand, the amount so paid by the plaintiff to the defendant, with interest thereon at the rate of seven per cent. per annum from the date of purchase to the date of demand."

It was orally agreed further that, if at any time after one year plaintiff should desire to return the stock to the defendant, plaintiff should give three days' notice in writing to the manager of the resale fund of such intention.

In compliance with the oral contract which the parties entered into, plaintiff desired to obtain from defendant the sum of $300. She made a demand for the same as provided in her oral contract for the return of $300 and interest. The defendant, strictly in conformity with this oral contract, did return to plaintiff $300. and interest.

It is admitted that pursuant to this oral contract plaintiff purchased from defendant 1,000 shares of stock, and that she did return to the defendant the stock so purchased by her, and demanded payment of the money by the defendant to the plaintiff and interest thereon from the 15th day of October, 1918, less certain sums stated which defendant acknowledged was paid to plaintiff. The defendant company was represented in this transaction by an agent named Smith who sold the 1,000 shares of stock, together with another 50 shares, at $1.20 a share. It is admitted that plaintiff purchased these shares. The defendant delivered this stock to the plaintiff and plaintiff paid the money, the purchase price, and the defendant accepted the same. Under this state of facts the case was tried to a jury under instructions

of the court, and the jury rendered a verdict for $877.86, and from this judgment defendant appeals.

Appellant in the beginning lays down the proposition of law that one who deals with an agent, knowing that he is clothed with certain circumscribed authority, cannot hold the principal where the act of the agent transcends such authority. As a general proposition of law this is good, but it is not absolute under all circumstances. A limitation of this proposition would be that a contract which by its terms may be performed within a year is not within the statute of frauds. It was said in *Carter White Lead Co. v. Kinlin,* 47 Neb. 409: "A contract not to be performed within one year, as meant by the statute of frauds, is one which by its terms cannot be performed within one year. A contract is not within the statute merely because it may or probably will not be performed within a year."

A contract providing for sale which contains an agreement to repurchase this stock is one and the same transaction, and as a matter of law may be considered as constituting but a single and original contract.

The sale and agreement to repurchase by the defendant and the acceptance of stock by the purchaser constituted a part performance sufficient to take the entire transaction out of the statute of frauds. The evidence on this proposition in the record is clear and undisputed. Further in answer to defendant's proposition hereinbefore quoted, see *Hankwitz v. Barrett,* 128 N. W. 430 (143 Wis. 639). The law laid down in that case is as follows: "The sale and delivery of stock and payment of the price, under a contract whereby the seller agreed to repurchase at the buyer's option, constituted an entire transaction which was sufficiently performed to take it out of the statute of frauds, relating to contracts for sale of goods, though the agreement to repurchase was oral."

Further answering defendant's first law proposition we call attention to the case of *Fremont Carriage Mfg. Co. v. Thomsen,* 65 Neb. 370. This case holds: "A con-

tract with a corporation by which it sells certain of its shares of stock and agrees to repurchase the same upon the happening of a certain specified event, is not *ultra vires;* and for a breach thereof the purchaser may recover of the corporation the amount agreed upon as the price of such repurchase."

In this connection we discuss the proposition that a corporation cannot be heard to contend that the sale of its stock was valid and that the contract to repurchase was void when they are made up of the same contract. In this case the corporation must approve the contract as a whole or return the purchase money and place the parties in *statu quo*. It is the overwhelming weight of authority that a private corporation while it may purchase its own stock, the transaction must be fair and in good faith. It must be free from fraud both actual and constructive. *Porter v. Plymouth Gold Mining Co.,* 29 Mont. 347, 101 Am. St. Rep. 569. That case lays down the following propositions of law:

"A private corporation may purchase its stock if the transaction is fair and in good faith, if it is free from fraud, actual or constructive, if the corporation is not insolvent or in process of dissolution, and if the rights of its creditors are in no way affected thereby.

"The mere repurchase of capital stock by a corporation does not tend to decrease the same unless the directors should absolutely merge or extinguish the stock after its purchase, within the meaning of Civil Code, sec. 438, providing that directors of corporations must not reduce or increase the capital stock except as thereinafter specially provided."

"A contract for the sale of stock by a corporation, whereby the corporation agreed to take back the stock if the purchaser should become dissatisfied therewith, is not objectionable as a secret contract between a corporation and a subscriber, by which the subscriber is at liberty to withdraw his subscription, but is valid and enforceable."

It is plain that, when a seller of stock under a contract

of purchase agreed to repurchase the same from the corporation and to pay therefor the same price, the purchaser must, as a condition precedent to the right to compel the corporation to repurchase, perform all the concurrent things necessary for the redelivery to the corporation.

It must be conceded to be true as a matter of law that, where an agent practices deceit in procuring subscriptions to the capital stock of a corporation, the subscriber is entitled to a rescission of the contract in the same manner and to the same extent as between natural persons.

There are indications that this contract was intrepreted alike by the parties, because the defendant promptly and unhesitatingly met the demand of the plaintiff and repurchased three hundred dollars worth of stock as per their contract. Therefore this must be in ratification of the terms and conditions of the oral contract as alleged by the plaintiff.

The next proposition appellant lays down is that parol evidence is not admissible to change, add to, vary or modify a written subscription for stock in a corporation. In support of this question, which we regard as axiomatic, appellant cites a formidable array of authorities. We may properly concede that as a rule these citations state the law, but they do not come within the exceptions to this rule and are not applicable under the facts of this case. A party cannot be heard to invoke authority to sustain that which works inequity and injustice and opens the doors to fraud.

It is also defendant's contention that the subscription for stock was the only contract between the parties and was a written contract that could not be varied or changed by parol testimony. It is also provided in exhibit A that each purchaser of stock shall be entitled to the services of the resale manager after one year from the date his stock certificate has been issued, and that it is the duty of the resale manager to take over such stock as is offered for resale upon such terms as such manager

shall deem for the best interest of the company. Then it is plain that, if this contract is binding between these parties, the agent Smith of the defendant company who sold the stock to plaintiff must have known of this contract and knew of this provision. These representations that he made to the plaintiff that the stock was 7 per cent. guaranteed stock and that the company would take the stock over were facts and matters peculiarly within the knowledge of this agent. These representations she had a right to believe, for it shows how the defendant company interpreted its own contract. She did not know that this resale manager would interpret the contract solely for the best interests of the defendant company. The agent knew; he was in a position to know. He was defendant's authorized representative. See *Blair v. Minzesheimer,* 108 N. Y. Supp. 799.

As a proposition of law we hold that, when a corporation enters into a contract to sell stock agreeing that at the expiration of six months from the date of the sale if the purchaser becomes dissatisfied with the investment he should be entitled to return the same, it could not be heard to say the sale was valid and the contract for repurchase was void. That would necessarily rescind the sale and return the purchase money and in this way place the purchaser in *statu quo. Porter v. Plymouth Gold Mining Co., supra.* We must assume in this case that the contract sued upon was made in a proper corporate manner and approved by the proper corporate officers. *Trenholm v. Kloepper,* 88 Neb. 236. If an officer of a corporation orally promises a prospective purchaser of the corporate stock to repay as an inducement the purchase price at any time, and the purchaser then acts upon that promise, then it is not within the statute of frauds.

It is plain that, in all the citations made by appellant, there are exceptions made, when it is necessary to get at the real intent and purpose of the contracting parties, to avoid fraud, injustice and misrepresentations.

The next proposition appellant lays down is that a contract for the repurchase of shares of stock which is not to be and cannot be performed within a year is within the statute of frauds which renders unenforceable agreements not to be performed within a year from the making thereof. The citations are eminent and contain a vast array of legal authority, but the answer to the propositions therein contained is that said in the case of *Cerny v. Paxton & Gallagher Co.,* 78 Neb. 134. This court has said that ordinarily deceit to be a ground for a recovery must relate to existing facts; but if one person by means of a promise which he makes with the secret intention of not performing it induces another to part with his money or property he is guilty of actionable fraud. That is the precise situation obvious in this case. See 2 Elliott, Contracts, sec. 837. This law constitutes the exception to the general rule argued by appellant. This proposition is well stated and to the point. There was deception and general deceit indulged in to induce the plaintiff to purchase. This appellant has received $1,500 in the sale of stock, and in consideration of doing the same cannot be heard to refuse to repurchase the same, thereby receiving the approval of the law. It has been held, and properly so, that a corporation retaining the fruits of an unauthorized contract cannot plead *ultra vires* when sued on the contract. The whole contract being an entirety and indivisible, every proposition in it must either stand or fall together. Then it naturally follows that, since the contract is indivisible, if it is claimed that a porton of it is *ultra vires* and hence a nullity, the proposition of *ultra vires* would permeate and make void the entire contract. Considering the alleged oral agreement and also the terms of the written contract, in our opinion, it makes but little difference in the result of this decision whether the contract was oral or written, because it plainly appears it was the inducements of the agent that caused plaintiff to part with her money. We believe it to be the law that, where one relies upon the statute of frauds to avoid an oral contract, he can only invoke this

defense when he himself is free from deceit and false representations; that one cannot be heard to invoke the statute of frauds as a defense in those cases and be permitted to reap the fruits or results of such a defense as this.

It is claimed by the secretary of defendant company that he had charge of issuing the stock and the general management of the sales business, and that the sales agent exceeded his written authority and that it never had the approval of the defendant company. If that is true, then why did the company upon notice and request pay to the plaintiff $300? Does not this payment indorse the contract their agent made, and does it not also show that both parties understood the contract alike? We recognize the application of the law as laid down in *Joyce & Co. v. Eifert*, 56 Ind. App. 190, wherein it was held: "Whenever an agent of a corporation duly authorized to procure subscriptions to its capital stock, induces persons to subscribe to shares of such stock by fraudulent representations or concealments, any person so defrauded will be entitled to a rescission of the contract in the same manner and to the same extent as between two natural persons."

It is an axiom of the law that he who asks relief of a court of equity must as a condition precedent to the grant of relief come into court with clean hands. While this was said with reference to a court of equity, yet we deem it just as wholesome and salutary when applied to a court of law. There was ample and sufficient evidence to sustain the verdict of the jury. As it appears in this record, the jury arrived at the only possible verdict under the evidence and the law as was given by the court in its instructions.

The judgment is

AFFIRMED.

MORRISSEY, C. J., and LETTON, J., concur in the conclusion only.