## Roberts v. Cauffiel.

*Statute of frauds—Sale—Memorandum in writing—Parol evidence—Part performance—Act of May 19, 1915.*

1. Where an agent of a corporation interested in its stock induces a party to execute a written subscription to the stock upon the agent's previous parol assurance that at the end of the year he would buy it back on request by refunding the purchase price and interest, and the subscriber pays for and accepts the stock, the agent cannot, in a suit against him personally, allege that the agreement was not within section 4 of the Sales Act of May 19, 1915, P. L. 543, inasmuch as the acceptance of the stock must be regarded as a part performance, which took the case out of the statute.

2. In such case, the written subscription and the oral agreement should be considered as constituting one contract.

3. Testimony was admissible that the parol promise to buy the stock was the inducement for the plaintiff's signing the written contract to purchase.

Motion by defendant for judgment *n. o. v.* and for a new trial. C. P. Blair Co., Jan. T., 1923, No. 166.

*Frank W. Barnhart* and *B. F. Warfel*, for plaintiff.

*Shettig & Nelson, Watson & Cleve, John Woodcock* and *A. L. Adams*, for defendant.

BALDRIGE, P. J.—This suit was instituted by the plaintiff to recover damages for the breach of an alleged contract between him and the defendant. The testimony offered upon the part of the plaintiff was in substance that Cauffiel was largely interested financially and practically directed the affairs of the Copper-Tungsten Company; that he employed agents who solicited subscriptions for the corporate stock of the company, and authorized them to state that he would agree to repurchase any of the stock if the purchasers were dissatisfied at the end of a year by the repayment of the money, together with 6 per cent. interest; that Cauffiel himself, at the time Roberts purchased the stock, made the same promise; and that, in pursuance to these promises, the plaintiff made purchases of the stock.

It developed that the Copper-Tungsten Company was unsuccessful, the stock became worthless and the plaintiff thereupon demanded of the defendant the repayment of the money he had invested therein, together with interest, which the defendant refused to do, hence this suit.

The jury by its verdict found that Cauffiel made these promises which induced the plaintiff to make the purchase of stock.

The defendant has moved for judgment *n. o. v.* and for a new trial.

The defendant alleges that the contract under which suit was brought is unenforceable, as it is in violation of the statute of frauds as contained in the Uniform Sales Act of May 19, 1915, P. L. 543, which provides as follows: "A contract to sell or a sale of any goods or choses in action of the value of

five hundred dollars or upwards shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf."

It is conceded that "goods or choses in action" is sufficiently comprehensive to embrace shares of corporate stock.

The defendant contends that, although the plaintiff declared on a parol contract, the testimony disclosed that the stock was purchased under a written subscription as follows:

"December 12, 1918.

"I hereby apply to purchase one thousand shares of the capital stock of the Copper-Tungsten Company, an Arizona corporation, the par value of $1.00 per share at $3.00 per share and enclose $3,000 in full payment non-assessable.

C. W. ROBERTS."

The plaintiff maintains that he was induced to execute the subscription for the stock as the result of the oral promises. Thus the question is raised as to whether or not the written contract and the oral agreement should be considered as one contract or separate contracts, and whether the delivery of the stock to the plaintiff and the payment of the money to Cauffiel was such a part performance as to take it out of the statute quoted.

If we consider the oral agreement and the written subscription for stock as one, the contract was valid.

If, however, the oral contract was separate and distinct from the written contract, then there could be no recovery had in this case, as there was no valid consideration to bind such a contract.

There seems to be some apparent conflict in decisions of other states upon this question, but a careful analysis of these cases leads us to the conclusion that the contradiction is more apparent than real. The decisions of the Massachusetts courts illustrate the distinction in this line of cases. One of the early decisions on this question is that of Boardman *v.* Cutter, 128 Mass. 388. We quote from the opinion of Mr. Justice Ames: "The defendant's promise was in substance a contract in a certain contingency to purchase the stock of the plaintiff. The company was about to be formed and organized as a corporation, and the defendant was desirous, in order to complete the organization, to prevail upon the plaintiff to be one of the stockholders to the extent of $1000. Among the inducements to the plaintiff to subscribe to that extent was the assurance of the defendant that he would purchase the shares at cost, less the interest, at any time that the plaintiff should be desirous to sell them. The plaintiff accordingly subscribed and paid for the shares, and they stood in his name as one of the stockholders for somewhat more than three years. At the end of that time, the plaintiff offered to transfer the stock to the defendant and demanded of him the fulfillment of his promises." The court held that, as the defendant's contract was not in writing, the action could not be maintained without violating the statute of frauds. Attention is called to the fact that the company was to be formed.

Later, in the same state, we find the case of Schaeffer *v.* Strieder, 89 N. E. Repr. 618. The defendant therein induced the plaintiff to purchase the stock of a corporation. The plaintiff became dissatisfied, giving thirty days' notice. The defendant was interested in the corporation, having a mortgage on all its property. The learned Chief Justice, in delivering the opinion of the court, said:

Roberts v. Cauffiel.

"If the sale of the stock was by the tobacco company through the defendant as its agent, the jury might still find that the contract was only for a qualified sale, and that the plaintiff had a right under it to rescind the sale and have back his money. They might also find that the defendant, while acting as agent for the company in selling the stock, had a large personal interest in the business, and that, in promising to pay back the plaintiff's money upon thirty days' notice if the plaintiff was dissatisfied, he assumed and was understood to bind himself as an individual, and that in this way he made an independent personal contract, in the nature of a guaranty of the company's principal contract, that, upon the rescission of the contract, the money should be paid back. Upon such a finding, the plaintiff could not be precluded from recovery under that part of the statute of frauds which was before the court, however it might have been under other pleadings and different requests for rulings. There may be other possible views of the evidence which would have left the contract an independent undertaking of the defendant, other than an agreement for the purchase of property by the defendant from the plaintiff.

"The case of Boardman v. Cutter, 128 Mass. 388, relied on by the defendant, is materially different. The parties were considering taking stock in a proposed corporation that had not been formed. . . . When he undertook to enforce the contract against the defendant, the court held that the substantive part of the agreement was to take this stock as a purchase and pay the stated price for it, and that it was within the statute of frauds. The language used in the present case, taken in connection with all the other facts and circumstances, is capable of a different construction."

In the same state we find the case of Wood v. Fairbanks, 137 N. E. Repr. 924, where the defendant, the president of the corporation, who did not have the title to the stock, persuaded the plaintiff to purchase stock held by Messrs. Logan and Johnson, and promised that if the plaintiff would buy the stock he would at any time take it off the plaintiff's hands. The court held that that promise was within the statute and that the plaintiff was not entitled to recover.

It will be observed in this last case that the defendant recommended the purchase of the stock from outside persons. The defendant was not a party to the contract of sale and purchase, and, therefore, the court held that it comes within the doctrine of Boardman v. Cutter. That case does not in any wise disturb the reasoning nor conclusion reached in Schaeffer v. Strieder, 89 N. E. Repr. 618.

In other states we find this interpretation upheld. In the case of Johnston v. Trask, 116 N. Y. 136, the court said: "When an agent, by an oral contract, sells and delivers the goods of a disclosed principal, his personal oral warranty of quality is not a contract independent of the contract of sale, but is a part of it, and one consideration is sufficient to support the sale and warranty. The oral contract of the defendants, that they would purchase for the plaintiff in the market at market rates the bonds for the usual compensation, and in case he should thereafter become dissatisfied with the bonds, that they would, on demand, take them off his hands at what they cost him, was a single contract."

In Lingenbach v. Lukenbach, 168 Wis. 481, it was held that a contract, similar to the one in the instant case, between an agent and a buyer is in the nature of indemnity, which is neither a contract for the sale of goods nor a contract for a debt of another, and, hence, does not come within the statute of frauds. See, also, Trenholm v. Kloepper, 88 Neb. 236.

Roberts v. Cauffiel.

In the case of Korrer v. Madden, 152 Wis. 646, cited by the defendant, there were two separate and distinct contracts, one for the sale of stock and the other for its repurchase; the contract of repurchase was in fact made with the corporation, while the contract of sale was made with the defendant.

In most of the cases cited distinction of this character appears.

These authorities are in harmony with a late utterance of our Supreme Court in the case of Producers Coke Co. v. Hoover, 268 Pa. 104. Mr. Justice Walling, speaking for the court, said (page 108) : "On the other hand, following the plain language of the statute, it is well settled that part performance will validate a parol contract for sale of personalty: Garfield v. Paris, 96 U. S. 557; Mills v. Hunt, 20 Wend. 431; Riley et al. v. Bancroft's Estate (Neb.), 71 N. W. Repr. 745; Hollrah-Dieckmann R. & F. Co. v. St. Louis, H. & W. Co. (Mo.), 171 S. W. Repr. 576; Gault, Brown & Co. v. Brown et al., 48 N. H. 183; Richardson v. Squires, 37 Vt. 640; Swigart v. McGee, 19 Ark. 473. 'The statute of frauds affects the remedy and not the validity of the contract, and if there is a completed oral contract of the sale of goods, the acceptance and receipt of part of the goods by the purchaser takes the case out of the statute:' Smith on the Law of Frauds, § 378; see, also, Williston on Sales, §§ 73 and 94."

The weight of authority seems to be that when one enters into a contract to sell property which he owns, or is financially interested in, containing the promise that he will repurchase it at a future time if the purchaser becomes dissatisfied, such an agreement is part of the original contract and is not within the statute of frauds.

The defendant complains, further, that the court erred in admitting the testimony that the parol promise to buy the stock was the inducement for the plaintiff's signing the written contract to purchase, and in support thereof cites the case of Spencer v. Colt, 89 Pa. 314. This case was considered by our Supreme Court in the case of Com. v. Julius, 173 Pa. 322, and the court therein held that the unexpressed intent, motive or belief existing was not evidence, but that it is competent to prove all that was said and done. The thoughts of one party cannot be proven to bind the other, but that is very different from testifying to the fact that false and fraudulent representations were the consideration or inducement to the party's action. As the party is a witness, there is no sound reason why he should not prove it by his own testimony, so long as he is confined to the facts and does not undertake to contradict his words or acts by an undisclosed motive or intent.

The same rule is recognizable in the case of Weaver v. Cone, 174 Pa. 104, where the plaintiff was asked, "What induced you to sell your stock at that figure?" The court held that the objection thereto was properly overruled. This testimony was, therefore, clearly competent.

The defendant further complains that the court erred in charging the jury that "the plaintiff might recover if he proved that, prior to entering into the written agreement, plaintiff and defendant made a parol agreement which was the inducement for executing the written agreement."

According to the testimony of the plaintiff, Daugherty and Miller were the alleged representatives of the defendant and solicited him to buy the stock, stating that the defendant authorized them to promise that he would receive his money back, plus 6 per cent., and that these promises were made frequently prior to the purchase of the stock. The money was paid in Mr. Cauffiel's office, at which time the witness testified that Cauffiel said to him, "Take all you can handle. If you are dissatisfied after one year with your investment, bring it back and I will take it."

A reference to the charge of the court will disclose that, after discussing the meeting of the plaintiff with the defendant in his office *at the time* the stock was purchased by the plaintiff, the jury was instructed as follows:

"Now, the plaintiff contends that he has so shown, and has called as witnesses, Mr. Daugherty, Mr. Miller and Mr. Monteith, who corroborate the plaintiff and said they were present at the meeting and have testified that the defendant in this case did make an oral agreement prior to the written agreement, as testified to by the plaintiff; and it is testified by the plaintiff that it was on the strength of that promise that he subscribed for the Seven Hundred Shares."

It is thus observed that the word "prior" was used as contradistinguished to anything that might have occurred after the contract, and referred to the conversation that was had at or about the time the contract was entered into. The jury certainly was not misled, especially in view of our reference to the alleged promises at the very time of the execution of the contract.

Now, July 3, 1924, these motions for judgment *n. o. v.* and for a new trial came on to be heard, and, after due consideration, the same are overruled.

From Robert W. Smith, Hollidaysburg, Pa.

NOTE.—Guppy *v.* Moltrup, 281 Pa. 343, in which it was held that the 4th section of the Sales Act of May 19, 1915, P. L. 543, in so far as it related to choses in action, was unconstitutional because they were not mentioned in the title, rendered the question discussed in the above opinion academic; but the Act of April 27, 1925, P. L. 310, by amending the title of the act so as to cover choses in action, makes it of practical interest. The judgment was affirmed, 283 Pa. 64, but as the 4th section had been held unconstitutional, its construction was not considered.