PIERCE v. ROTHWELL

(No. 1448; April 24, 1928; 267 Pac. 86)

*John Dillon* and *C. A. Zaring,* for plaintiff in error.

*E. E. Enterline* and *H. C. Brome,* for defendant in error.

BROWN, District Judge.

The plaintiff in error was plaintiff and defendant in error was defendant in the lower court. They will be referred to as plaintiff and defendant respectively here.

Plaintiff claims in his petition that on or about March 31, 1922, he bought certain shares of the capital stock of the First National Bank of Thermopolis, Wyoming, from defendant, who was at that time the President, Director and a large stockholder of said bank, relying upon his oral promise made at the time of the purchase that in case plaintiff became dissatisfied with the stock, defendant would repay to plaintiff on demand the sum paid for the stock. Plaintiff became dissatisfied with the stock about January, 1923, and offered to return it to defendant, and demanded repayment from him. This was refused. The answer was an admission of defendant's position in the bank and a

general denial of the remaining allegations of the petition. After the plaintiff rested, the court directed a verdict in favor of defendant. The case is here on error proceedings. The sole question in this court is whether or not the oral promise on the part of defendant, in case plaintiff became dissatisfied with the stock, to "take it off his hands," is within the inhibition of the 17th Section of the Statute of Frauds, and therefore unenforceable. When plaintiff and his witness were interrogated with reference to the oral agreement, objection was made and the court reserved his ruling, and received the testimony. At the close of plaintiff's case, the court then ruled on the objection and struck the evidence from the record. The defendant contends that because the plaintiff in his brief makes no mention of the adverse ruling on the admission of this evidence, the point has been waived by him under rule 14 of this court. That after the evidence was out of the record, the court could not do otherwise than sustain the motion for a directed verdict, since there was no evidence in the record to sustain a verdict for plaintiff. The argument is ingenious. The point is extremely technical. The only question before the court below was whether or not the oral promise was within the Statute of Frauds. The rulings on both the objection to the evidence and the motion for a directed verdict were made at the same time, and because, as we understand, the court believed that the oral promise was within the Statute of Frauds. It certainly would be unnecessary for plaintiff to repeat his argument on each of the points mentioned in his brief in order to have the point considered. Whenever two assignments of error raise the same question, it may be presented under either of the assignments. See McClintock v. Ayers, 36 Wyo. 132, 152, 253 Pac. 658.

Section 4726, Wyo. Comp. Stat. 1920, (§ 4, Uniform Sales Act) provides:

"A contract to sell or a sale of any goods, or choses in action of the value of fifty dollars or upwards shall not be enforceable by action unless the buyer shall accept part of

the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf.''

The position of the defendant is that there were two separate, distinct contracts; the first, a sale of the stock by some bank officer to plaintiff, and second the parol agreement by defendant to repurchase the stock from plaintiff in case he became dissatisfied. That where the promisor is not selling his own stock he could not orally make a binding contract to repurchase that which he did not previously own, and if he undertook to do so, his parol agreement would be in the nature of a separate independent contract; the first one being completed when the stock was delivered and paid for, the second between different contracting parties and wholly within the statutes of frauds.

The evidence shows that the whole transaction was made with Rothwell in his private office in the bank. On cross-examination plaintiff does say he bought the stock from the bank and that he paid the bank for it, yet when permitted to answer freely, he says he really bought from Rothwell and gave him his check for same and that he thought, but would not be certain, that he received the stock from him. We quote from the examination:

''Q. Well now leading up to the day you purchased the stock, just tell the jury what transpired in Thermopolis that day? A. I met Mr. Palmer and he told me he was going over to the bank, and he went over to the bank with me. He bought some stock in the bank and talked to me and told me he thought it was a good thing, but I didn't want to tie my money up, but I talked with Mr. Rothwell and he told me the bank was paying 20% on the investment, that is 20% on the par value. I had a little money there on deposit, and when I told him I didn't want to tie up in it, he said, 'Any time you become dissatisfied I will take the stock off your hands.' ''

On cross examination:

"Q. In other words you were to buy 25 shares of the capital stock of the bank, from the bank, there is where you got it, didn't you? A. Yes, I bought it on the strength of Mr. Rothwell's ——— Q. You were to buy 25 shares of the capital stock of the bank and pay $5000.00 for it, that was the first agreement? A. Yes. Q. Then after you bought it from the bank and paid them for it, then Mr. Rothwell agreed at any time you became dissatisfied with the stock, he would buy it back from you and pay you the same price you paid the bank for it? A. He told me this before I bought the stock. Q. I am not trying to confuse you at all, I am just trying to get this straight. Doctor, now understand me, you were to buy the stock from the bank, that you testified to, twenty five shares of the capital stock of the bank and pay $5000.00 for it, and then he agreed that if you did that, took the stock from the bank, if at any time you became dissatisfied with the investment or purchase, he would buy the stock back from you at the price you paid the bank? A. Yes, sir. Q. And that is the agreement you acted under in substance: In other words, after you made that agreement with him, then you went and bought the stock from the bank and paid for it? A. I really bought the stock from Mr. Rothwell, didn't rely on the bank, didn't know anything about the banking business, wish I did. Q. But you did buy it from the bank and paid the bank for it? A. Yes, I paid the bank. Q. In other words, as you testified here, he (Rothwell) wanted your influence and so on, and that if you would buy the stock from the bank he later on would buy the stock from you at any time you were dissatisfied and pay you the same price you paid the bank? A. Yes, sir."

It seems clear from all of the testimony that there was only one transaction. There is no testimony whatever that any of the negotiations leading up to or at the time of the purchase of this stock was had with any other officer of the bank. Plaintiff says he really bought from Rothwell, and gave him his check in payment therefor. It seems that the witness never understood clearly that the attorney for defendant was trying to bring out the fact that the stock was bought from the bank in a separate transaction from the

oral agreement of Rothwell. The evidence in the record that the stock belonged to the bank and was bought from the bank is in the questions rather than in the answers.

Section 53, Title 12, U. S. Code (Rev. Stat. § 5140) requires that all of the capital stock of a National Bank be sold before it shall be authorized to do business. Sec. 57 of the same title (Rev. Stat. § 5142) provides that no increase of the capital stock of a National Bank shall be valid until the whole amount of such increase shall be paid in. Sec. 83, of the same title (Rev. Stat. § 5201), is as follows:

"No association shall make any loan or discount on the security of the shares of its own capital stock, nor be the purchaser or holder of any such shares, unless such security or purchase shall be necessary to prevent loss upon a debt previously contracted in good faith; and stock so purchased or acquired shall, within six months from the time of its purchase, be sold or disposed of at public or private sale, or in default thereof, a receiver may be appointed to close up the business of the association, according to Section 192 of this title."

The prohibitions of the law under which the bank in question was doing business suggest the possibility that the stock, though delivered by the bank, may have been the stock of defendant, as it is only in very exceptional circumstances that such a bank will have its own stock for sale. We think in view of these statutes, the state of the record is such that the jury could have found that Rothwell was selling plaintiff his own stock. The court in Schaeffer v. Strieder, 203 Mass. 467, 89 N. E. 618, says:

"Although the note and check which plaintiff gave for the stock were payable to the Tobacco Company, the jury might well have believed from the conduct of the defendant and from such of his relations to the company as appeared in the evidence, that the stock belonged to him and that he was the principal in the whole transaction."

But if we are wrong in this, there are other reasons why the judgment of the lower court cannot stand. By the weight of authority the plaintiff should recover under the state of facts disclosed by the record. The question is not free from difficulty. The courts passing upon it are not in accord, but with some exceptions, the cases may be divided into three classes:

1. Where the sale of the stock and the oral promise to repurchase were two distinct transactions, and the party making the oral promise to repurchase had no connection with or interest in the sale of the stock, and his promise to repurchase was in the nature of a gratuitous undertaking, the agreement to repurchase is within the statute and unenforceable. Koner v. Madden, 152 Wis. 646, 140 N. W. 325; Chamberlain v. Jones, 52 N. Y. Supp. 998, 32 App. Div. 237; Becker v. Kreul, 173 Wis. 273, 181 N. W. 211.

2. Where the vendor is the owner of the stock, it has been held that the oral promise is part of the original contract and payment for and delivery of the stock takes it out of the Statute. Knutsman v. Petteys, 74 Colo. 342, 221 Pac. 888; Armstrong v. Orler, 220 Mass. 112, 107 N. E. 392; Johnson v. Trask, 116 N. Y. 136, 22 N. E. 377; Griffin v. Bankers' Realty Co., 105 Neb. 419, 181 N. W. 169; Vahland v. Gelhaar, 136 Wis. 75, 116 N. W. 869; Hankwitz v. Barrett, 143 Wis. 639, 128 N. W. 430.

3. Where the defendant acted as agent in the sale, but was an officer of the corporation whose stock he sold, and was interested in its success, the weight of authority is to the effect that the contract is enforceable. There are two theories on which recovery is allowed. (a) On the theory that the oral contract is a part of the original contract of sale, and the delivery of the stock, and payment therefor, take it out of the statute. Roberts v. Cauffiel, 6 Pa. D. & C. 706. (b) That the oral contract whereby the defendant agreed to take the stock off the plaintiff's hands, and refund the money or to repurchase it, is in the nature of a con-

tract of indemnity and therefore not within the statute. Lingleback v. Ludenback, 168 Wis. 481, 170 N. W. 711, 14 A. L. R. 380; Kunzmann v. Petteys, 74 Colo. 342, 221 Pac. 888; Schaeffer v. Strieder, supra; Trenholm v. Kloepper, 88 Nebr. 236, 129 N. W. 436; Gurwell v. Morris, 2 Cal. App. 451, 83 Pac. 578; Clement v. Rowe, 33 S. D. 499, 146 N. W. 700.

In Gurwell v. Morris, supra, and Clement v. Rowe, supra, the court held that the oral promise did not amount to a contract to purchase since the return of the stock was not mentioned. We think the principle is the same whether the stock is returned or not. It is usually in the contemplation of the parties that when plaintiff becomes dissatisfied, the stock is of less value than the sum paid, usually of little or no value, and the refunding of the money paid would have no relation to the value of the stock when returned. The oral promise would then be essentially a contract of indemnity rather than a contract to repurchase. In the case of Hull v. Brown, 35 Wis. 652, Brown as the paid agent upon a commission basis of Gunnison & Sherman, by written agreement sold a mower to Hull. As an inducement to Hull to make the contract, Brown promised orally that, if Hull was not satisfied with the mower, upon its return he would return the note, or pay it himself, or pay back to Hull the amount he had paid thereon. The court held that the oral contract was in the nature of a contract of indemnity, and not within the statute of frauds. To the same effect is Cooper v. Huerth, 156 Wis. 346, 146 N. W. 485. Huerth as the paid agent of a corporation sold plaintiff an automobile, and at the time of sale agreed that if the machine was not satisfactory it could be returned and the notes given therefor would be returned. The court held that it was perfectly competent for the defendant, though acting as agent, to make such a contract for the purpose of promoting his business as agent.

276

We think the evidence excludes the probability of this transaction coming within the first subdivision above. Then if the jury should find that it came within either the second or third divisions, the plaintiff would be entitled to recover.

It follows that the judgment should be reversed and the case remanded for a new trial.

*Reversed and Remanded.*

KIMBALL and RINER, JJ., concur.