(65 App. Div. 139.)

## CROOK v. SCOTT et al.

(Supreme Court, Appellate Division, First Department. November 8, 1901.)

1. CONTRACT—ACTION FOR BREACH—PLEADING.

Where plaintiff alleged that she purchased stock in a corporation in consideration of an agreement that, if the corporation failed to pay a certain annual dividend thereon, defendant would pay the same, and that the corporation failed and defendant refused to pay, it was not error to refuse to dismiss the complaint on the ground that there was no allegation that plaintiff was the owner of the stock at the time of the action.

2. SAME—AGREEMENT TO PAY DIVIDENDS—STATUTE OF FRAUDS.

Defendant's contract was not within the statute of frauds, as an agreement to answer for the debt, default, or miscarriage of another. It was an independent agreement.

3. SAME—CONTRACT—CONSIDERATION.

Plaintiff's payment for the stock was a good consideration for defendant's promise.

Appeal from trial term, New York county.

Action by Ida Hamilton Crook against John C. Scott, impleaded with Edward R. Dunham. From a judgment in plaintiff's favor, and from an order denying a new trial, defendant Scott appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

James R. Rogers, for appellant.

Frank Barker, for respondent.

INGRAHAM, J. The plaintiff seeks to enforce an agreement evidenced by a letter to her signed by the defendants. There is no serious dispute as to the facts. It appears that the defendants were directors and officers of a corporation known as the Weehawken Wharf Company, of which the plaintiff's husband appears to have been also a director. The corporation, having some of its stock for sale, requested the plaintiff's husband to purchase it. After some negotiations the plaintiff's husband stated that he had $25,000 belonging to the plaintiff; and it was agreed that he would purchase the stock for her, upon condition that the defendants would guaranty that the plaintiff would receive yearly dividends at the rate of 8 per cent. upon the stock, and in the event that such dividend was not paid by the corporation the defendants would make up any deficiency

personally. Upon this agreement, the plaintiff's husband acted for the plaintiff, purchased the stock, and received the letter addressed to the plaintiff, signed by the defendants, containing the terms of the agreement that had been made. This letter is dated February 13, 1895, and is as follows:

"Mrs. Ida Hamilton Crook—Dear Madam: We herewith confirm the verbal agreement which we made with you this day with reference to the purchase on your part of two hundred and fifty (250) shares of the Wee-hawken Wharf Co.'s preferred stock at $100 per share. The agreement be-tween us is as follows: That, in the event of the said Weehawken Wharf Co. not declaring eight per cent. dividend in each year on said stock, we agree jointly and severally to pay you in cash semiannually on or before the 15th day of January and the 15th day of July of each year, so long as said corporation shall exist, such an amount of money as may be necessary to make up the eight per cent. dividends on the above-mentioned stock; and we do hereby bind our heirs, executors, and administrators to the perform-ance of this contract.

"Yours, truly,                                          John C. Scott.
"Witness:                                               E. R. Dunham.
    "J. D. Kurtz Crook."

After this letter was executed and delivered the stock was paid for by three checks of a firm of which the plaintiff's husband was a member, aggregating $25,000,—one drawn to the order of Louis S. Scott, treasurer, one to the order of John C. Scott, and one to the order of the defendant Dunham; and these checks appear to have been indorsed over to the company and received by it. The defend-ant Dunham did not appear to defend. The defendant Scott was examined as a witness on the trial. He disputed the terms of the original agreement between the plaintiff's husband and himself, but admitted the signing of the letter and the payment of the money for the stock after the execution and delivery of the letter before re-ferred to. It is not disputed but that the corporation failed to pay dividends for the year 1898, and it is to recover the amount of 8 per cent. dividends upon the stock for that year that this action is brought.

The complaint alleges the agreement, and that, relying thereon, the plaintiff purchased the stock, and paid therefor to the corpora-tion the sum of $25,000, but contains no allegation that the plaintiff was the owner of the stock at the time of the commencement of the action. Upon the trial the defendant moved to dismiss the com-plaint upon the ground that there was no allegation that the plain-tiff was the owner of the stock, or any part thereof, during the pe-riod for which she claims to recover the dividends, and upon appeal insists that a denial of this motion was error; but this appears to be without merit. The complaint alleged the purchase of the stock by the plaintiff, and there is no allegation in the answer that the plain-tiff had ceased to be the owner of any stock that she had purchased. By the purchase the plaintiff became the owner of the stock, and it is presumed that such ownership continued until it was terminated by a sale or transfer of the stock. It seems clear that this complaint would be good upon demurrer. Upon the trial the certificate of stock was produced by the plaintiff. It certified that the plaintiff was the owner of this stock, and there is no allegation or proof tend-

ing to show that she had ever parted with it, or was not the owner during the year 1898. The agreement sought to be enforced is an agreement with the plaintiff whereby, in the event of the said corporation not declaring 8 per cent. dividend in each year on said stock, the defendants agreed, "jointly and severally, to pay you in cash semiannually on or before the 15th day of January and the 15th day of July of each year, so long as said corporation shall exist, such an amount of money as may be necessary to make up the eight per cent. dividends on the above-mentioned stock." While undoubtedly it would be true that had the plaintiff parted with the stock, so that she had not the right to receive dividends declared by the corporation upon the stock, the defendants' obligation to pay such dividends would cease, yet so long as she continued the owner of the stock, and entitled to receive the dividends declared thereon, the obligation of the defendants continued.

The defendants also claim that this agreement is within the statute of frauds, as an agreement to answer for the debt, default, or miscarriage of another, and is void, in that it fails to set forth a valid consideration for the promise. It seems clear, however, that this agreement was not within the statute of frauds. By it the defendants agree that, in the event that the corporation fails to declare 8 per cent. dividends in each year on its stock, they will pay the amount of money necessary to make up the 8 per cent. dividends thereon. Upon acquiring this stock the plaintiff acquired no right to 8 per cent. dividends from the corporation. It was under no obligation to pay her any dividends until such dividends should be duly declared. The agreement, therefore, was not one to answer for the debt, default, or miscarriage of the corporation, but was clearly an independent agreement by the defendants by which they assumed and agreed to pay a sum of money which would be sufficient to make the dividends declared by the company equal to 8 per cent. upon the stock. There is not, directly or indirectly, any debt or obligation of the corporation that the defendants agreed to answer for.

It is also claimed that, assuming the contract not to be within the statute of frauds, no consideration was proved. But we think it clear that there was ample consideration. That the plaintiff paid this money for the stock, relying upon this agreement of the defendants, is clearly established by the evidence. The fact that the receipt for the certificate in the stock book is dated February 12th, and the letter is dated February 13th, is entirely immaterial. There is no evidence that the plaintiff actually received the stock prior to the receipt of this letter, the receipt for the stock being dated upon the same day that the certificate is dated; but the consideration for the stock was all paid after the execution and delivery of the letter. The payment by the plaintiff for the stock was a good consideration for the defendants' promise. The sale of the stock, and the execution by the defendants of the agreement, was one transaction, by which the plaintiff bought and paid for the stock; the consideration being the transfer of the stock by the corporation, and the agreement by the defendants sought to be enforced.

There were exceptions to rulings on questions of evidence, but

the rulings were correct, and no evidence was excluded that could in any possible way be of advantage to the defendants.

It follows that the judgment and order appealed from must be affirmed, with costs. All concur.