KORRER, Appellant, vs. MADDEN, Respondent.

*February 21—March 11, 1913.*

*Statute of frauds: Sale of corporate stock: Oral agreement to repurchase: Promise of third person to buy: Agency: Appeal: Facts omitted from verdict: Finding presumed.*

1. Where corporate stock is sold, paid for, and delivered pursuant to an oral agreement wherein the vendor as a condition of the sale agrees to repurchase such stock at the option of the buyer, the whole constitutes an entire original contract that is sufficiently performed to take it out of the statute of frauds.

2. But a mere oral promise by a third person, though made at the time of the sale and an inducing cause thereof, to take such stock from the buyer at the latter's option, where the value of the stock exceeds $50, is a separate and collateral agreement and within the statute, and is void unless there is at least a partial performance thereof.

[3. Whether or not, if an agent of a corporation, engaged in selling its stock, as a part of the contract of sale enters into an in-

dividual agreement to repurchase the stock, such individual promise would be within the statute of frauds, not decided.]

4. If a special verdict as submitted fails to cover a material question of fact upon which the evidence raises an issue, and no request was made by the appellant for the submission of such question, a finding by the court will, under sec. 2858*m*, Stats., be presumed in support of the judgment.

APPEAL from a judgment of the circuit court for Fond du Lac county: CHESTER A. FOWLER, Circuit Judge. *Affirmed.*

The plaintiff set forth in her complaint that the defendant sold to her on two separate occasions stock in the Church Furnishing Company of Fond du Lac, to the amount in the aggregate of $350, under a promise to purchase the same from her if at any time she desired to sell. She further alleged that she relied on the promise and was induced thereby to make the purchase; that she became dissatisfied with the stock and demanded of the defendant that he purchase the same from her according to his agreement, and that he refused to do so. Judgment was demanded for the purchase price of the stock with interest. The answer was a general denial. The jury returned the following verdict:

"(1) Did the defendant, on or about August 2, 1910, to induce the plaintiff to purchase the stock of the Church Furnishing Company, evidenced by certificate number 105, promise to take the stock so evidenced on plaintiff's request, at the amount paid by the plaintiff therefor? *A.* Yes.

"If to the first question you answer 'Yes,' then answer this question:

"(2) Did the plaintiff rely on said promise in purchasing said stock and was she induced thereby to purchase the same? *A.* Yes.

"(3) Did the plaintiff thereafter request the defendant to take the said stock? *A.* Yes.

"If to the third question you answer 'Yes,' answer this question:

"(4) When was such request made? *A.* September, 1910.

"If to the third question you answer 'Yes,' then answer this question:

"(5) Did the plaintiff request the defendant to take the

stock after the receipt of the $7.50 dividend in the spring of 1911? *A.* Yes.

"If to the fifth question you answer 'Yes,' then answer this question:

"(6) At about what time was such request made? *A.* April, 1911.

"(7) Did the defendant, on or about August 12, 1910, to induce the plaintiff to purchase the stock of the Church Furnishing Company, evidenced by certificate number 106, promise to take the stock so evidenced on plaintiff's request at the amount paid by the plaintiff therefor? *A.* Yes.

"If to the seventh question you answer 'Yes,' then answer this question:

"(8) Did the plaintiff rely on said promise in purchasing said stock, and was she induced thereby to purchase the same? *A.* Yes.

"(9) Did the plaintiff thereafter request the defendant to take said stock? *A.* Yes.

"If to the ninth question you answer 'Yes,' then answer this question:

"(10) When was such request made? *A.* September, 1910.

"If to the ninth question you answer 'Yes,' then answer this question:

"(11) Did the plaintiff request the defendant to take the stock after the receipt of the $7.50 dividend in the spring of 1911? *A.* Yes.

"If to the eleventh question you answer 'Yes,' then answer this question:

"(12) At about what time was such request made? *A.* July, 1911."

After the verdict was returned plaintiff moved for judgment thereon and defendant moved for judgment notwithstanding the verdict. The court granted the defendant's motion, and from a judgment dismissing the complaint the plaintiff appeals.

*J. E. O'Brien,* for the appellant.

For the respondent there was a brief by *H. M. Fellenz,* attorney, and *L. A. Williams,* of counsel, and oral argument by *Mr. Fellenz.*

BARNES, J.  This court has held that where corporate stock is sold, paid for, and delivered pursuant to an oral agreement, wherein the vendor as a condition of the sale agrees to repurchase such stock at the option of the buyer, the whole constitutes but an entire original contract that is sufficiently performed to take it out of the statute of frauds (sec. 2308, Stats.), so that the vendee may sue and recover from the vendor on the agreement to repurchase.  *Vohland v. Gelhaar,* 136 Wis. 75, 116 N. W. 869; *Hankwitz v. Barrett,* 143 Wis. 639, 128 N. W. 430.  In both of these cases the vendee understood that he was purchasing the stock from the owner thereof and did not know that the vendor was in fact acting as the agent of an undisclosed principal.

The circuit judge had the above rule of law in mind when he awarded judgment notwithstanding the verdict, because he says in his opinion:

"The complaint alleges in substance that the defendant sold to the plaintiff stock belonging to the defendant and that the defendant, as part of the agreement of sale, agreed to take back the stock at the price paid at any time the plaintiff might wish.  If this were the case, quite likely the case cited by plaintiff's counsel, *Johnston v. Trask,* 116 N. Y. 136, 22. N. E. 377, would rule this one."

The law as declared in this case is in perfect accord with what is said in the two Wisconsin cases referred to.

The trial judge held, however, that the present case did not come within the rule of law above set forth, because the agreement involved was "nothing more than an agreement by a third person to purchase stock sold by one party to another," and because the agreement to repurchase was "distinct and separate from the agreement between the parties to the sale consummated."  Continuing further he says:

"But the proof shows conclusively that the defendant never owned or had in his possession the stock purchased by the plaintiff, and that the stock was issued and delivered by the

company [the Church Furnishing Company] direct to the plaintiff, and that payment was made by the plaintiff direct to the company."

If the circuit judge had a correct conception of the facts, his legal conclusion drawn therefrom is unquestionably sound.    If *Madden's* agreement was separate and independent from that made for the purchase of the stock, it was not reduced to writing, no part of the stock bargained for was delivered to him, and he paid no part of the purchase price. He made a mere oral agreement to purchase personal property of the value of more than $50 in case the owner desired to sell, which would fall squarely within the condemnation of the statute.    So the real question in the case is: Did the trial court misapprehend the import of the evidence offered?

The testimony of the plaintiff was to the effect that the defendant wanted her to buy shares of stock in the Church Furnishing Company; that at first she declined to do so, but upon defendant's representation that he would take the stock off her hands after a little while she consented and took 200 shares, for which she paid $200 on August 2d, and that upon substantially like representations she made an additional purchase of 150 shares for $150 on August 12th, and that in each instance she relied on the defendant's promise to buy the stock from her on request.    The plaintiff is in error in stating the number of shares purchased.    The shares were $10 each and her first purchase was of twenty shares and the second was fifteen.    The plaintiff admits that the stock was delivered to her by the secretary of the corporation, and her testimony, fairly construed, shows that she paid the purchase price to such officer.

The defendant testified that he had been placing some insurance for the plaintiff; that he called on her in reference thereto; that she told him she had a little money to invest; that he advised her to buy some of the stock in question; that he held fifty shares of stock in the corporation at the time and

afterwards purchased twenty more; that he thought the investment a good one; that he had no interest in the sale of the stock and received nothing for his part in the transaction, and made no sale of any stock in the company; that he did not agree to purchase the stock from the plaintiff; that when she expressed a desire to make the first purchase he called up the secretary of the company by telephone, who came to plaintiff's house and explained to *Mrs. Korrer* how nicely the company was doing, what a nice business it was having and how successful everything looked, and she said she would take "twenty shares—$200." Sallade, the secretary of the company, delivered to the plaintiff the stock purchased, and received from the plaintiff the money paid for the stock. The evidence also shows that plaintiff knew that defendant was not attempting to sell his own stock, because she says he told her that he would buy the stock himself only he was short of money at that time. The evidence relating to the transaction which led to the second purchase of stock on August 12th does not differ materially from that relating to the first purchase, except it does not show that on this occasion Sallade went into details concerning the condition of the company.

From the foregoing synopsis of the evidence it will be observed that the evidence does not show that defendant agreed to sell any stock to the plaintiff or that plaintiff agreed to buy any stock from the defendant, although defendant undoubtedly knew that the corporation had stock for sale. It does not appear that the matter of price was mentioned between them. It does appear that after defendant had urged plaintiff to buy and had said he would take the stock off her hands and she had expressed a willingness to purchase, the secretary of the corporation was called in and he explained the condition of the company and fixed the price on the stock, and that plaintiff agreed to take it and did receive it from the corporation and paid the representative of the corporation the purchase price. On this state of the evidence the trial court con-

cluded that the undisputed evidence showed that the contract of purchase was in fact made with the corporation, and that the agreement of the defendant, which the jury found was made, was an independent, separate, and distinct contract from that made with the corporation. Acting on this belief, it is apparent from the opinion filed that the first and seventh questions in the special verdict were not intended to cover the matter of a sale of the stock by the defendant to the plaintiff. It was taken for granted that the evidence showed that no such sale had been made. In the words "stock of the Church Furnishing Company" in these questions, the word "of" is probably used as meaning "from." But if this is not a correct surmise, and the words mean corporate stock issued by the Church Furnishing Company, we have no finding that the defendant made the sale. One person may induce or influence another to buy corporate stock which he neither sells nor is authorized to sell, and where the person is induced or influenced or persuaded to make his contract of purchase with the corporation or with some third party who may own it. The charge under these two questions might throw some light on just what they were intended to cover, but it is not returned with the record. We cannot presume error. In view of the clear and explicit statement made by the trial judge, we must presume, if we are to indulge in presumption at all, that the instructions advised the jury that the question of a sale of the stock by the defendant to the plaintiff was not before them. No question covering such a proposition was requested. If the testimony raised an issue on it, we must presume a finding by the court that the contract of sale was made between the plaintiff and the Church Furnishing Company. Such a finding is in fact made in the opinion of the court. There is certainly ample evidence in the record to sustain it. We think the evidence construed most favorably to the plaintiff showed only an independent collateral agreement on *Madden's* part to purchase the stock from the plaintiff, and that the trial judge was correct in saying that there

was no evidence tending to show that the defendant made the contract of sale. However this may be, the question not having been passed upon by the jury, and the judge's finding to that effect being supported by the evidence, the judgment must be affirmed.

Having arrived at this conclusion, it is unnecessary to consider whether, if defendant had acted as the agent of the corporation in making the sale, and as part of the contract had entered into an individual agreement to repurchase the stock, such individual promise would be within the statute of frauds.

The statute of frauds sometimes works hardships, but it is the law as written by our lawmaking power, and it is the duty of the courts to enforce it in all cases which come fairly within its scope. Our statute is substantially taken from Stat. 29 Car. II, which has stood the test of over two centuries of time and change. The English statute was incorporated in our statute law in 1849 and has since remained there without substantial change or amendment. This is pretty substantial evidence that the good which it has accomplished far outweighs any wrong that has resulted from its operation.

*By the Court.*—Judgment affirmed.