ISIDOR GAINSBURG, Respondent, v. BENJAMIN BACHRACK, Appellant.

First Department, April 13, 1934

*Abraham N. Geller* of counsel [*Bernard A. Saslow* with him on the brief; *Abraham N. Geller*, attorney], for the appellant.

*Isidor Gainsburg*, respondent, in person.

MARTIN, J. The plaintiff brought this action to recover damages for the failure of the defendant to comply with the terms of an agreement to repurchase certain stocks of a corporation which plaintiff says he was induced to buy because of defendant's misrepresentations and a promise to repurchase.

Set forth in the complaint are three causes of action. The first two are based upon agreements by the defendant to purchase certain shares of stock of The Ross Stores, Inc., acquired by the

plaintiff from that corporation. The third cause of action is in fraud, predicated upon alleged oral representations by the defendant which it is asserted induced the plaintiff to acquire the stock.

To the first two causes of action the defendant interposed general denials with an affirmative defense of the Statute of Frauds (Pers. Prop. Law, § 85, subd. 1). To the third cause of action the defendant interposed a general denial.

The plaintiff in his bill of particulars set forth the agreement upon which he relies, as follows: " The agreement alleged in paragraph ' 15 ' of the complaint was written, a copy of which is hereto annexed marked Exhibit 'A,' except that it was orally agreed that the same shall apply to the purchase of the 150 shares of first preferred stock, as well as to the 250 shares of second preferred stock."

The Ross Stores, Inc., is a New Jersey corporation organized in 1919. The defendant, Benjamin Bachrack, was at all times a large stockholder therein and an officer and director, having been treasurer in 1923, secretary in 1925, and president in 1928. The corporation owned and operated a chain of department stores throughout the country. In 1923 it owned seventeen and each year thereafter acquired new stores.

As revealed by the consolidated balance sheet of January 31, 1923, the capital structure of the corporation then consisted of $1,000,000 authorized common stock, $400,000 thereof being outstanding, and $500,000 authorized preferred stock, $100,000 being issued. At that time the corporation appears to have been prosperous and in a sound financial condition.

In 1925 it was reorganized and refinanced, as a result of which the entire capital structure was changed. The original preferred stock was retired and a new issue of 10,000 shares of no par value second preferred stock created. The new second preferred stock was given to the holders of the original preferred stock in exchange therefor. The holders of the original preferred stock received with the new second preferred stock a dividend of new common stock. In addition thereto, a new issue of 7,500 shares of first preferred stock, par value $100, was created, for sale to the public. There was also issued $600,000 worth of common stock represented by 100,000 shares thereof. The bankers sold the new first preferred stock for the corporation. Dividends were paid on the first and second preferred stock without interruption until 1928, after which time it continued to pay dividends upon the first preferred stock but not upon the second preferred stock.

On or about May 1, 1923, the plaintiff, an attorney, who acted at times for The Ross Stores, Inc., and for the defendant and his brother individually, purchased 250 shares of the preferred stock

of The Ross Stores, Inc., under a written agreement that the defendant Bachrack would repurchase the stock if required to do so within a certain time, regardless of the amount paid therefor. By the terms of the agreement defendant was to pay $100 per share for said stock if redeemed during the first year, $105 per share if redeemed within two years and $110 per share if redeemed within three years.

It was further agreed as follows: " It is understood that this is not only a guarantee of payment of the stock represented by certificate number — but that the undersigned upon one week's notice in writing immediately agrees to buy and pay for same as herein provided."

It is here important to note that there were no further written agreements with reference to this stock. Although this contract giving the plaintiff the right to call upon the defendant at any time within the three years to repurchase the stock was made in 1923, it appears that another arrangement was made in 1925. At that time an oral agreement was entered into, the terms of which are in dispute. It is claimed by the plaintiff that he surrendered his stock and accepted 250 shares of second preferred stock, purchased additional stock and received 325 shares of common stock under a new arrangement. He contends that at that time there was an oral agreement made with him that the written contract was to continue. This is denied by the defendant. In any event, a determination of this case does not depend upon the existence of the oral agreement but on its validity.

The exact proposition which the plaintiff says was made is that if the plaintiff would exchange his 250 shares of preferred stock for 250 shares of second preferred stock with no par value, he would receive a bonus of 325 shares of common stock and he would have stock in a company which would be in better financial condition than before; that with the reorganization it would maintain a sufficient reserve to retire the second preferred stock.

When the exchange was made, the defendant says plaintiff was given the option of taking cash or new stock. With respect to this option the defendant gave the following testimony: " I told Mr. Gainsburg of an arrangement that had been made with some bankers by the name of Kelly, Drayton & Converse, 40 Exchange Place, New York City, who had agreed to buy an issue of $750,000 of first preferred stock. So he asked me what did I intend to do about his stock, which was preferred stock in that company? I said he had two options; one to get his cash or secondly he could take second preferred stock that was to be created and for which there would be a dividend given of one share of common, of new common, for one share of the preferred stock in the old company; and he says, ' That's pretty good. It looks as if your business is going to

come along and I will take that.' Q. Was anything else said in that agreement? A. At the same time I showed Mr. Gainsburg the figures as they would appear. I showed him figures before the financing and after the financing."

Irrespective of the form of the arrangement, it was established that the entire proposition to exchange the stock was oral and not in writing.

The plaintiff's first and second causes of action are based upon the oral agreement which the defendant says was never made, but, if made, is unenforcible because of the Statute of Frauds. The trial court held that such an agreement was enforcible and need not be in writing and he so charged the jury.

In our opinion the Statute of Frauds was an absolute bar to a recovery upon the first and second causes of action. There is no claim that defendant accepted or received the stock herein involved, or that he gave anything to bind the alleged oral contract or in part payment thereof, so that the question presented is whether the alleged oral agreement for the repurchase of stock by a third party should have been in writing to be enforcible.

In *Morse* v. *Douglass* (112 App. Div. 798) the court, in deciding a similar proposition, said: " The defense is that such an agreement is void under the Statute of Frauds. * * * If there was but a single agreement involved in the whole transaction, the statute does not apply. If, on the other hand, there were two separate and distinct contracts — one, that the plaintiff would buy the stock from the principal who the defendant represented, and the other, that the defendant would buy the stock back from the plaintiff at any time he became dissatisfied concerning it and refund him the money — then the statute would apply. I think it is altogether clear under the evidence that there were two separate and distinct agreements. The plaintiff knew that he was dealing with the defendant simply as an agent of a disclosed principal, and that when he agreed to buy the stock the title thereto was to come from the principal and not from the agent, and that the money paid therefor was paid through the agent to the principal. That arrangement was closed when the stock certificates were delivered and the consideration paid. In addition to this was the agreement between the plaintiff and the defendant to take back the stock. That was made with the defendant individually and not with anyone else. The contracting parties were different under the separate agreements."

In *Leach* v. *Weil* (129 App. Div. 688) the court, in a case involving a stock transaction, said: " It is unnecessary to cite authority for the familiar and well-settled rule that the note or memorandum

required by the Statute of Frauds must contain all of the terms of the contract and cannot be eked out by oral proof."

In *Centonza* v. *Curran* (239 App. Div. 849) the court affirmed a judgment holding that a similar transaction was unenforcible by reason of the Statute of Frauds. (See, also, *Hagar* v. *King*, 38 Barb. 200, and *Johnston* v. *Trask*, 116 N. Y. 136.)

The third cause of action is in fraud based upon alleged oral representations made by defendant which are asserted to have been false and to have induced the plaintiff to purchase the stock in question. Several alleged misrepresentations were set forth in the complaint and bill of particulars. It appears from the brief of the respondent that he now relies upon but one misrepresentation, namely, that the defendant stated to him "that after the financ: ing of 1925, the corporation would have surplus and profits of $750,000." In answer to a demand for a bill of particulars of the misrepresentations, the plaintiff failed to mention the representation now relied upon.

The defendant contends that the judgment cannot be sustained upon the theory that the above representation was false for the reason that it was not set forth in the complaint or bill of particulars; that no motion was made by plaintiff to conform the pleadings to the proof so as to include therein the alleged representation, and that it was not passed upon or considered by the jury because it was not submitted to the jury by the court. It is further contended that the judgment is not based upon either the allegations of the complaint or the proofs. It is pointed out that under no theory could the corporation's surplus and profits be increased by refinancing, for the reason that the refinancing was to be secured by the sale of stock and although the proceeds of such sale would go into the corporation, nevertheless the stock would be a liability. By such refinancing the corporation would have more working capital but no greater surplus or profits. Wholly different versions of this representation were given by the plaintiff and his witness, who testified as follows: " Q. And the only thing that was said that day with respect to that agreement was that the bankers were putting in money and that the company would have $750,000 in cash, is that right? A. He referred to it as three-quarters of a million. Q. And that was the entire conversation regarding the bankers or what the bankers were putting into the company? A. Yes. He didn't say what the bankers were putting into the company. He said they were taking the first preferred stock."

In addition, the truth or falsity of such a representation would depend entirely upon the theory of financing adopted by the parties.

There are several reasons why this judgment, based on fraud, cannot be sustained. This is not an action for rescission. It is an action to recover damages for fraud. The rule of damages has been frequently stated and is set forth in a number of cases on the subject. The measure of damages in such a case is the difference between the amount paid for the property and the value thereof at the time of the sale or acquisition, not the difference between what the property was worth and what it would have been worth if the representations had been true.

In *Reno* v. *Bull* (226 N. Y. 546) the court said: " The purpose of an action for deceit is to indemnify the party injured. All elements of profit are excluded. The true measure of damage is indemnity for the actual pecuniary loss sustained as the direct result of the wrong. [*Urtz* v. *N. Y. C. & H. R. R. R. Co.*, 202 N. Y. 170; *Ochs* v. *Woods*, 221 id. 335.] The plaintiff paid $5,000 for the stock purchased by him. If he were entitled to recover at all, it was the difference between that amount and the value of the stock which he received with interest from that time. He was not entitled to anything else. This is the rule not only in this State, but in the Federal courts   *   *   *   and in many of the States   *   *   *. It is also the rule in England." (See, also, *Nelvan Construction Corp.* v. *Sanka Realty Corp.*, 227 App. Div. 51.)

The only evidence in the record to establish the value of the stock at the time it was purchased by plaintiff is to the effect that it was worth the amount paid for it. There is no evidence to show that at that time it was not worth that amount. In fact it appears to have been worth its full purchase price for several years after the purchase, and dividends were paid thereon and accepted and retained by plaintiff.

It should also be noted that the plaintiff herein purchased stock in a corporation at a time when it was prosperous and successful, with a guaranty by a third party that the stock would be redeemed at any time within three years. In 1925, when there was a reorganization of the company, the plaintiff was evidently of the opinion that he had an excellent investment for he turned in his 250 shares of stock and had reissued to him 250 shares of second preferred stock. His faith in his investment was so great that he purchased an additional 150 shares. With his stock he received 325 shares of common stock of the corporation. The investment met with continued success and dividends were paid on the whole or a part thereof until 1929 when the corporation, like many other corporations, felt the effect of the depression. It was then too late to demand a repurchase. His stock, like many other investments, had rapidly depreciated in value. He had received and retained

substantial dividends. The plaintiff then sold the common stock and received $9,350.

We are of opinion that the last cause of action, therefore, must fall for two reasons: (1) The failure to plead and prove the representation now claimed; (2) the failure to prove any damages.

The judgment should be reversed, with costs, and the complaint dismissed, with costs.

FINCH, P. J., MERRELL, O'MALLEY and UNTERMYER, JJ., concur.

Judgment reversed, with costs, and complaint dismissed, with costs.