JOY *v.* PAGEL.

1. FRAUDS, STATUTE OF—SINGLE TRANSACTION—AGREEMENT TO RE-
PURCHASE STOCK.
Whether or not transaction whereby plaintiff's assignor made an
advancement to a corporation and defendants, officers of cor-
poration to which advancement was made, agreed to repurchase
certificate of stock at an increased price on or before a certain
later date, was a "single transaction" as that term is used in
ascertaining whether statute of frauds is applicable, must be
determined in the light of facts by which it is surrounded (2
Comp. Laws 1929, § 9443).

2. SAME—PART PERFORMANCE.
Transaction whereby, in return for advancement made by plain-
tiff's assignor to corporation of which defendants were officers,
latter agreed to repurchase stock certificate at later date at an
increased price *held,* a single transaction which was partially
performed by delivery of the stock certificate, and, where there
was a writing containing defendants' agreement to repurchase,
signed by them, the statute of frauds was fully complied with
(2 Comp. Laws 1929, § 9443).

3. SAME—CORPORATIONS—OFFICERS' PERSONAL AGREEMENT TO RE-
PURCHASE.
Where a party induced to advance money to a corporation under
an agreement by the officers to repurchase the stock delivered
to the lender, the officers' agreement is a part of the original
undertaking and is not within the statute of frauds and is en-
forceable even though oral (2 Comp. Laws 1929, § 9443).

BUSHNELL, SHARPE, and CHANDLER, JJ., dissenting.

Appeal from Wayne; Brennan (Vincent M.), J.
Submitted October 12, 1938. (Docket No. 42, Calen-
dar No. 40,151.) Decided February 2, 1939.
Rehearing denied March 10, 1939.

Assumpsit by William M. Joy, as assignee of Uni-
versal Securities Trust, against Benjamin S. Pagel,

Olin Finney and F. Langdon Hubbard for sums due on a stock transaction. Judgment for plaintiff. Defendants appeal. Affirmed.

*G. Leslie Field*, for plaintiff.

*Lucking, Van Auken & Sprague,* for defendants.

NORTH, J. Upon this record, as I view it, the judgment entered in the circuit court should be affirmed. I think the trial judge was right in holding that each of the four transactions out of which this litigation arises was a "single transaction." In his opinion Mr. Justice SHARPE holds that in each there were two separate transactions; and citing some authorities, he holds that because it was not a single transaction, plaintiff is barred of recovery under the statute of frauds.

Obviously there can be no hard and fast rule because of which it must be said that every transaction of this character is a "single transaction" or is not. Instead the character in this respect of each transaction should be determined in the light of the facts by which it is surrounded. The facts in the instant case in brief are as follows: Defendants sought to obtain money of plaintiff's assignor for the benefit of a corporation of which defendants were stockholders and officers. The transactions out of which this litigation arises are of the same character as the transactions through which these same defendants secured funds from the First Income Trading Corporation, with which plaintiff herein was closely identified. Unquestionably the transactions with the First Income Trading Corporation were on the basis of individual liability of these defendants who were at that time advised that the various transac-

tions would not be closed on the basis of the financial responsibility of the Tire Guard Company. While there is some dispute in the testimony in the instant case, there seems to be little room for doubt that the transactions on which plaintiff bases his right to recover were closed on the strength of the individual liability of defendants and that they were well aware of that fact. Defendants signed the written memoranda of the part of the transactions which plaintiff now seeks to enforce. In consideration of these undertakings plaintiff's assignor paid to the corporation the amounts fixed as the purchase price of the stock of the corporation which stock defendants agreed in writing to purchase from plaintiff's assignor. On this record it would be absurd to assert that any portion of these respective transactions would have been consummated if defendants as individuals had not bound themselves to the undertaking evidenced by the written memoranda. The fair and seemingly necessary conclusion sustained by this record is that a portion of the consideration which induced plaintiff's assignor to part with its money was defendants' written agreements to purchase the stock from plaintiff's assignor, and in three of the four transactions such purchase was to be *at an increased price.* The result in each instance was a single transaction of a tri-lateral character. The proven facts negative the conclusion that one portion of the respective transactions was wholly independent of the other. In such a case justice should not be defeated by resort to the inapplicable theory that incident to each of these four dealings there were two separate and independent transactions.

There was part performance of each of these four contractual transactions, and further, in the con-

summation of each there was a memorandum in writing signed by defendants which sufficiently recited the part of the undertaking which they obligated themselves to perform. Thus there was full compliance with the requirements of the statute of frauds, the pertinent provision of which reads:

"A contract to sell or a sale of any goods or choses in action of the value of one hundred dollars or upwards shall not be enforceable by action, unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged, or his agent in that behalf." 2 Comp. Laws 1929, § 9443 (Stat. Ann. § 19.244).

We should be more concerned with reaching a right result than in following decisions from other jurisdictions which, at least as applied to the instant case, seem not to be sound. While plaintiff relies upon *Beverly* v. *Richards*, 255 Mich. 508, it should be noted that decision therein did not turn upon the question of law now before us. But the following aspect of the *Beverly Case* is somewhat persuasive. Therein the defendant sold stock of a corporation in which he was interested both as a stockholder and creditor; and incident to such sale he orally agreed if the corporation did not pay certain specified dividends "he would pay the same, and she (the purchaser) could have her money back any time she wanted it." The case was decided on other grounds, but there is no intimation in the opinion that in the absence of other grounds of defense, plaintiff could not have recovered on defendant's agreement to purchase from plaintiff the stock of the corporation

which he sold to her. On this phase of the *Beverly Case,* Justice WIEST who wrote for the court said:

"There is no merit in defendant's claim of want of consideration for the promise to repurchase the stock. Authorities are to the effect that, where one sells stock and promises the purchaser to repurchase, the transaction is single and there is a sufficient consideration to take the promise out of the statute of frauds.

"Defendant claims that the purchase was made of the corporation, and, therefore, no consideration passed to him. If defendant made the promise in order to induce the purchase that he might obtain the money for stock held by him (as collateral to a loan to the corporation), the consideration was present, and the fact that the issue was by the company out of stock held by him (as collateral) and the money came to him made the promise binding."

The following is a holding from one of the New York courts:

"A promise by the directors of a corporation, in order to induce a woman to purchase from the corporation a number of its shares of stock, that in the event of the corporation not declaring an eight per cent. annual dividend on the stock they would pay to her semi-annually, as long as the corporation should exist, such an amount of money as might be necessary to make up the eight per cent. dividends on the stock, is not a promise to answer for the debt, default or miscarriage of the corporation, and is not within the statute of frauds. The payment by the promisee of the purchase price of the stock furnishes a good consideration for the directors' promise." *Crook* v. *Scott* (syllabus), 65 App. Div. 139 (72 N. Y. Supp. 516).

"If an officer of a corporation orally promises a prospective purchaser of the corporate stock to repay the purchase price at any time and the purchaser

acts upon the promise, the agreement is an original contract, and is not within the statute of frauds." *Trenholm* v. *Kloepper* (syllabus), 88 Neb. 236 (129 N. W. 436).

"Where a party is induced to purchase stock in a corporation under the promise and agreement by the president, director, and stockholder of the corporation that at any time he wanted his money back he would pay it to him with interest, it is an original undertaking." *Fischer* v. *Bashwitz* (syllabus), 152 Okla. 231 (5 Pac. [2] 356).

"An agreement on the part of the seller of securities, or on the part of the broker of the purchaser, to buy back the securities from the purchaser at a later date if the purchaser should become dissatisfied with them or for any other reason, is not within the scope of the statute of frauds, and is enforceable even though oral. The original sale and the agreement to repurchase are regarded as an entire contract and not as two separate and independent ones, the latter being in effect an agreement to rescind the former. The statute, therefore, is inapplicable. This is true whether the agreement to repurchase is made by the seller of the stock or by a broker who has purchased it on behalf of his customer and has no interest in the sale except as broker." Meyer's Stock Brokers and Stock Exchanges (1st Ed.) p. 246.

The above quoted text is sustained by the following cases cited by the author: *Johnston* v. *Trask*, 116 N. Y. 136 (22 N. E. 377, 5 L. R. A. 630, 15 Am. St. Rep. 394); *Fitzpatrick* v. *Woodruff*, 96 N. Y. 561. Counsel for appellants are of the opinion that the two cited cases are in conflict with *Gainsburg* v. *Bachrack*, 241 App. Div. 28 (270 N. Y. Supp. 727); affirmed 266 N. Y. 468 (195 N. E. 158). In this we cannot agree. Instead, in the later case the New York court quoted from *Morse* v. *Douglass*, 112 App. Div. 798 (99 N. Y. Supp. 392), the following:

"If there was but a single agreement involved in the whole transaction the statute does not apply. If, on the other hand, there were two separate and distinct contracts—one, that the plaintiff would buy the stock from the principal who the defendant represented, and the other, that the defendant would buy the stock back from the plaintiff at any time he became dissatisfied concerning it and refund him the money—then the statute would apply."

Under the record in the *Gainsburg Case* the New York court found there were two separate and distinct contracts, and therefore the statute of frauds barred recovery; but under the facts in the *Johnston Case* (as in the instant case) there was only one transaction and recovery was not barred by the statute. In the *Johnston Case* the court said:

"When an agent, by an oral contract, sells and delivers the goods of a disclosed principal, his personal oral warranty of quality is not a contract independent of the contract of sale, but is a part of it, and one consideration is sufficient to support the sale and warranty. The oral contract of the defendants, that they would purchase for the plaintiff in the market at market rates the bonds for the usual compensation, and in case he should thereafter become dissatisfied with the bonds, that they would, on demand, take them off his hands at what they cost him, was a single contract."

I am in accord with Mr. Justice SHARPE that under the record in the instant case the agreements to purchase this stock from plaintiff's assignor were the individual agreements of appellants. And for the reason above indicated these agreements should be held to be binding and enforceable. Judgment to that effect entered in the circuit court is affirmed, with costs to appellee.

Wiest, Potter, and McAllister, JJ., concurred with North, J.

Sharpe, J. (*dissenting*). Plaintiff William M. Joy, as assignee of Universal Securities Trust, brought suit against defendants. The cause was tried before the court and without a jury. Plaintiff was given judgment in the sum of $14,704.93. Defendants appeal.

The facts in this cause are very much in dispute, but there is competent evidence to sustain the following facts. In December, 1934, and January, 1935, Universal Securities Trust advanced $12,650 under four agreements. The following is a copy of one of them:

> "American Tire Guard Company
> "5919 Commonwealth Avenue,
> "Detroit, Michigan, U. S. A.
>                       "December 11, 1934.

"Universal Securities Trust,
"3164 Penobscot Building,
"Detroit, Michigan.
"Attention: Mr. William M. Joy.
"Gentlemen:

"We herewith deliver to you 7,000 shares American Tire Guard Stock certificate No. 74 validated for sale in Michigan by the Michigan securities commission, for the sum of $5,950.

"We the undersigned hereby agree to repurchase said shares from you on or before Friday, December 28th for the sum of $7,000 cash; you in turn agreeing to deliver same to us upon receipt of said $7,000.

>                   "Very truly yours,
>                       "Benj. S. Pagel,
>                           President.
>                       "Olin Finney,
>                           Vice-President & Secretary.
>                       "F. Langdon Hubbard,
>                           Treasurer."

These advancements were made at the solicitation of defendant Finney who at that time was vice-president and secretary of the American Tire Guard Company. The company was organized to market a patented tire guard, but was not as yet in production. At the time of the transaction, the company had no surplus and later became insolvent. The agreements were not performed and it appears that owing to the financial condition of the tire company at the time the agreements were made and at the time that suit was begun, the tire company could not legally enter into or perform such an agreement. The trial court found as a fact that, at the time the agreements were entered into, the stock represented by the certificates mentioned in the agreements was owned by the corporation and not by the individuals who signed the agreements; that at the time of the mentioned transactions, the corporation (American Tire Guard Company) was involved in experiments looking towards the bettering of its own products and was endeavoring to raise money for the purpose of erecting a plant to carry on its activities; that prior to the instant transactions, there were at least two other transactions of a similar nature with the First Income Trading Corporation, a company with which plaintiff was associated; and that witnesses Grow and Wicks, officers of the First Income Trading Corporation, testified for plaintiff and witness Grow stated that he informed Mr. Finney that his company would do business on the basis of personal liability. The record shows that Mr. Joy testified that the advancements were made on condition that defendants assume personal liability.

The trial court held as a matter of law that the liability was an individual liability and not a corporate liability; and that the two transactions, namely, the original advancement and the agreement

to repurchase constitute a single transaction and there being partial performance, the statute of frauds does not apply.

In appealing defendants contend that the liability is that of the corporation; that if they are liable, such liability is secondary to that of the corporation and since the corporation could not under the facts be legally obligated to repurchase its own stock, there could be no secondary liability on their part; and that the instruments are unenforceable under the statute of frauds because the Universal Securities Trust, as seller, did not execute the memoranda nor was there any part performance.

We have examined the record and conclude that there is evidence from which the trial judge could find that it was the intent of the parties to bind the defendants individually, but it is contended by defendants that if the repurchase contracts are interpreted as the personal obligations of defendants, then they are unenforceable under the statute of frauds (2 Comp. Laws 1929, § 9443 [Stat. Ann. § 19.244]) because they are neither signed by Universal Securities Trust as seller on resale nor has any part performance been had by the payment of any consideration or their receipt of any portion of the bargained stock.

The rule is that unless a contract to purchase goods (valued over $100) is in writing and signed by both parties, it is not mutual and binding, and is void under the statute of frauds, *Willebrandt* v. *Sisters of Mercy,* 185 Mich. 366; and that shares of stock are "goods" within the meaning of the statute of frauds. *Sprague* v. *Hosie,* 155 Mich. 30 (19 L. R. A. [N. S.] 874, 130 Am. St. Rep. 558).

The claim is made that neither Mr. Joy nor his assignor Universal Securities Trust signed the

agreements to sell the stock back to defendants. Assuming this to be true, the question resolves itself into whether the parts of the agreements are separate and distinct from each other. Plaintiffs contend that the two parts constitute a single transaction and the original delivery from the first seller to the first buyer operates as a partial performance and takes the contract out of the statute of frauds.

In 27 C. J. p. 237, § 253, it is said:

"A contract by which one sells his own goods, payment and delivery being made, and agrees to repurchase them, upon the demand of the buyer, is an entire contract, and the promise to repurchase is taken out of the statute by such payment and delivery; but it is otherwise when an agreement for repurchase is made by a person other than the owner of the goods."

In *Calvert* v. *Mason City Loan & Investment Co.*, 219 Iowa, 963 (259 N. W. 452), it is said:

"The general rule is that if the seller was selling his own property or his own stock, then the agreement does not come within the statute of frauds. Because the contract was one entire contract,—a part of which contract was the obligation of the seller, stated as a condition of said purchase and sale by the purchaser that at any time purchaser should return the bonds, the seller would pay the money received by him for them,—this obligation of the seller was a part of the original contract. The contract for the purchase and sale constitutes one contract, which was partly performed by purchaser paying the money for the bonds and the seller handing over the bonds. * * *

"In other words, the statute of frauds does not apply when the seller sells his own property. In this case, if the bonds belonged to the Mason City Loan & Investment Company, then the statute would

not apply, but if the bonds did not belong to the Mason City Loan & Investment Company and they simply acted as agent, according to the cases cited, the statute of frauds would apply.

"Where the property is purchased from an agent, the contract of purchase is between the purchaser and the agent's principal, and the contract of repurchase is a contract between the purchaser and the agent, in which case you have two contracts, and the better weight of authority holds that the contract to repurchase comes within the statute of frauds. See *Korrer* v. *Madden*, 152 Wis. 646 (140 N. W. 325); *Becker* v. *Kreul*, 173 Wis. 273 (181 N. W. 211); *Seaman* v. *Sweat*, 22 Ga. App. 92 (95 S. E. 378); *Morse* v. *Douglass*, 112 App. Div. 798 (99 N. Y. Supp. 392)."

In *Becker* v. *Kreul*, 173 Wis. 273 (181 N. W. 211), the court said:

"This is an action to recover damages for breach of contract arising by reason of the refusal of the defendant to repurchase the stock in accordance with the agreement made December 24, 1917. * * * This was a sale of stock owned by Cochems to the plaintiff, Becker, a part of the inducement being that the defendant (Kreul) agreed that he would, as found by the jury, take the stock and return the money if the plaintiff became dissatisfied within a year. These facts bring this case squarely within *Korrer* v. *Madden*, 152 Wis. 646 (140 N. W. 325). Here, as there, the defendant did not sell his own stock, no part of the purchase price was received by him, the stock was delivered to the plaintiff by Cochems, and payment was made to the company. We need not repeat here the discussion found in *Korrer* v. *Madden*, and we must hold that the contract in this case was within the statute of frauds. It was not in writing and therefore void. Wisconsin Statutes 1919, § 2307."

Plaintiff contends that *Beverly* v. *Richards,* 255 Mich. 508, is controlling in the instant case. In that case defendant was an individual and actually received the money paid to the corporation-seller as the corporation used the money to pay off a debt owing between the corporation and the defendant. The stock sold by the corporation was stock which defendant held in pledge to secure his personal loan to the corporation.

The facts in the above case may be distinguished from the controlling facts in the case at bar. In the instant case, the stock was the property of the corporation and was sold to plaintiff; the consideration was received by the selling corporation; and the agreements to repurchase were made by defendants. Consequently, two different transactions were involved and the agreements, not being signed by plaintiff's assignor, were therefore void.

The judgment of the trial court should be reversed without a new trial. Defendants should recover costs.

BUSHNELL, and CHANDLER, JJ., concurred with SHARPE, J. BUTZEL, C. J., did not sit.