242 P.2d 282

**MITCHELL v. THORNE.**

No. 5427.

Supreme Court of Arizona.

March 17, 1952.

Jennings, Strouss, Salmon & Trask and Richard G. Kleindienst, all of Phoenix, for appellant.

George D. Locke, of Phoenix, for appellee.

UDALL, Chief Justice.

Raymond O. Mitchell, plaintiff (appellant) sued Niblack Thorne, defendant (appellee) for $7,500 on an alleged oral contract to repurchase one thousand shares of the capital stock of Hadley Products, Inc., an Arizona corporation. The defendant's answer specifically denied there was such an agreement and also pleaded as an affirmative defense that if such an agreement was found to exist it was unenforceable because of the statute of frauds. The case was tried to the court, sitting without a jury, which made findings of fact and conclusions of law and then entered judgment for the defendant thereby denying plaintiff recovery upon his complaint. This appeal followed.

Our case, Rugee v. Hadley Products, Inc., 73 Ariz. 362, 241 P.2d 798, will throw additional light on the affairs of this cor-

porate entity and the plaintiff's dealings therewith.

As the basis for its judgment the court's findings were to the effect (1) that defendant on October 8, 1947, promised that if plaintiff invested in such stock and thereafter desired to sell it, he (defendant) would repurchase the stock for the amount plaintiff had paid for it; (2) "That thereafter, and on October 10, 1947, Plaintiff visited the plant and office of the corporation in Phoenix, and made an agreement to purchase one thousand (1,000) shares of its stock from Frank Hadley, the owner of such stock and the President of the corporation, for Seventy-five Hundred and no/100 Dollars ($7,500.00). On making said agreement with Mr. Hadley, Plaintiff gave him his check for One Thousand and no/100 Dollars ($1,000.00) on account of such purchase, and paid the balance of the purchase price during October, 1947." and (3) that plaintiff before filing this suit made a formal tender of his stock certificate to defendant demanding that he repurchase it, which demand was refused. From these findings the court concluded as a matter of law: "That the promise of the Defendant to purchase Plaintiff's stock was a separate and independent transaction, and no part of Plaintiff's agreement whereby he purchased his stock, and therefore is void and unenforceable under the Statute of Frauds. Section 58–101, subsection 4, A.C. A.1939."

The first and, as we believe, vital assignment of error is in substance that the trial court erred in concluding as a matter of law that the promise of the defendant to purchase plaintiff's stock was a separate and independent transaction and no part of plaintiff's agreement whereby he purchased his stock and was therefore void and unenforceable under the statute of frauds, because such conclusion of law was not sustained by the evidence and is not supported by the authorities.

The following proposition of law was submitted in support of this assignment: "Where, in a sale of stock by a corporation to an individual, an officer of the corporation interested in the success of the corporation orally promises to repurchase the stock, such an oral contract is a part of the contract of sale of stock and the delivery of the stock to the individual and payment therefor constitutes performance and takes the oral contract out of the statute of frauds."

The defendant does not particularly challenge this as an abstract statement of law but insists that it is predicated upon a false factual premise.

The facts, however, are not in dispute and both parties agree that: "The only issue before this court is whether the trial court properly applied the law to the facts." Plaintiff does not dispute the court's findings of fact, supra, but rather urges that considering those findings with

other evidence that stands uncontradicted and not inconsistent with these findings, leads to a conclusion of law contrary to that found by the trial court. Defense counsel on the other hand seek to limit the court's examination of the facts to the meager ones found by the trial court and thereby exclude from our consideration other very pertinent testimony given by the defendant himself which places an entirely different light on the dealings between the parties. It is defendant's further contention that following the agreement to repurchase—which he maintains was an independent transaction in which the latter was in nowise interested—the plaintiff purchased the corporate stock from its owner, Frank Hadley, the president of the corporation.

We are of the opinion that to prevent justice from being administered blindly we are entitled to consider, in determining this appeal, the testimony of the defendant which supplements but does not necessarily conflict with the facts as found by the lower court. Let us therefore look to the record to ascertain the defendant's interest in this company. On direct examination he testified: "Q. Now, Mr. Thorne, directing your attention to the fall of 1947, did you at about that time make an investment in a company known as the Hadley Products Corporation? A. Yes, on the 10th of September, 1947, I invested $5,000 in the Company, which brought me a ten per cent interest. I also took an option

at that time for an additional 15 per cent, or $7,500 worth of stock." (Note: He later testified that this option was exercised on Dec. 2, 1947.)

In response to a question as to whether the amount of Mitchell's (plaintiff's) investment had been determined at the time he made his promise to repurchase the stock, the defendant stated:

"A. I think it had been because there was 15 per cent *of the corporate stock not outstanding at that time,* and both Hadley and I felt that the greater portion of the risk had been passed, and *we offered the stock to him* at $7.50 a share rather than Five, which he agreed was fair, *and that would leave five per cent not outstanding.* That would be then ten per cent interest for $7500. Now, later on I wish to add that we held a special directors' meeting at the Arizona Club. I don't remember what month, but it was in June of the following year, and I brought up the point and we did pass and resolve that Ray Mitchell would be issued the additional five per cent—. (Emphasis supplied.)

\* \* \* \* \* \*

"Q. Now, subsequently, did Mr. Mitchell invest in the Company? A. Yes, I think it was the following day he came out and made further investigations and we engaged in conversation and he issued a check for $1000."

And on cross-examination it was brought out:

"Q. Mr. Thorne, at the time you were discussing this investment with Mr. Mitchell in October of '47 and at the time that he made the investment, you were a stockholder and officer and a director of the Corporation, were you not? A. Yes.

"Q. At that time you were familiar with its financial condition, were you not? A. Yes.

"Q. You knew the Corporation needed money badly? A. Yes.

"Q. And you were very anxious to obtain Mr. Mitchell's or anybody's money? A. Somebody's money, yes.

"Q. You had put in $5000, and all the money you had put in was gone, used up? A. Well, almost all of it, I imagine.

"Q. And you knew if you didn't get additional money you would stand to lose your own investment, didn't you? A. That is right.

"Q. So you had a very definite positive personal interest in getting additional capital, did you not? A. I did, except my investment was still small at that time.

"Q. Now, under those circumstances you thought it entirely proper to sell Mr. Mitchell five dollar stock for $7.50, did you not? A. I didn't think one way or the other on that, Mr. Ozell.

"Q. But you did sell him stock equivalent to five dollar stock at $7.50? A. Yes, but I would like to point out Frank Hadley was head of the Corporation."

■ From this record the conclusion seems inescapable that the oral promise to repurchase by defendant—which agreement was expressly found by the trial court—was but a part of the contract to sell the corporate stock. While technically speaking the purchase was (as was found by the trial court) from Frank Hadley, there can be no doubt that this was an investment in the company and that the money paid by plaintiff went into the coffers of the corporation and that the defendant as a stockholder was directly benefitted thereby. Furthermore within two days after the last promise to repurchase was made the plaintiff purchased the stock in question and the defendant, an officer of the corporation, was present and actively participated in the sale. It should be noted that the parties at this time had been intimate friends for over 25 years. Under this state of the record we fail to see how it can be seriously contended that the plaintiff did not act in reliance upon the promise of the defendant and that in reality the sale was not for the benefit of the corporation.

We are therefore of the opinion that the learned trial court erred in concluding as a matter of law that the defendant's promise to repurchase was separate and apart from the plaintiff's agreement to buy the stock. We hold that such conclusion is not sustained by the evidence as the only reasonable inference to be drawn therefrom is that the oral promise to repurchase was part of the contract to sell the stock.

Having reached this conclusion let us next examine the authorities to determine

the governing principles of law. This matter has been before the courts of other jurisdictions many times and there seems to be two divergent views both supported by respectable authority. See the excellent and exhaustive annotation in 121 A.L.R. 312. The liberal rule which is supported by the weight of authority and which we deem the better rule is to the effect that where the promise to repurchase is not separate or independent from the contract of sale, the promise is not unenforceable under the statute of frauds. In other words, where an officer or substantial stockholder of a corporation promises to repurchase the stock and the purchaser, relying upon the promise purchases stock from the corporation, the repurchase agreement is a part of the original contract of sale and not within the statute of frauds. Beckroge v. South Carolina Public Service Co., 185 S.C. 210, 193 S.E. 315; Joy v. Pagel, 287 Mich. 453, 283 N.W. 646, 121 A.L.R. 306; Pierce v. Rothwell, 38 Wyo. 267, 267 P. 86. The following statement appears in 49 Am.Jur., Statute of Frauds, section 248: "In the case of sales of corporate securities, where the person effecting or inducing the sale and making the promise of repurchase or repayment is not merely an agent, but also an officer or large stockholder, of the corporation issuing or otherwise owning the securities sold, the courts are somewhat more reluctant to hold the promise void under the statute of frauds. In fact, the weight of authority in this class of cases holds the promise not to be within the statute. * * *"

These legal principles are controlling as to the factual situation shown by this record, i. e., the person making the promise of repurchase was an officer and stockholder of the corporation, the buyer of the stock relied upon the promise, the corporation actually received the consideration and benefits of the sale, the defendant as an officer and stockholder was thereby benefitted, and plaintiff's part of the contract was fully executed.

Inasmuch as the disposition of the first assignment determines the appeal, there is no occasion for us to treat the other assignments which raise (a) the question of whether this is a contract of indemnity and therefore not within the statute of frauds, or (b) that in any event the defendant was estopped by his conduct from relying upon the statute of frauds.

The judgment of the lower court is reversed with directions to enter judgment for the plaintiff.

STANFORD, PHELPS and LA PRADE, JJ., concurring.

DE CONCINI, Justice.
I dissent.

The appellant in his brief makes this statement: "The findings of fact by the trial judge are not disputed. The only issue

before this court is whether the trial court properly applied the law to the facts."

With no facts in dispute, the majority has quoted evidence to supplement the findings of fact which, it says, negatives the trial court's conclusion. I do not agree with the majority on that point.

The lower court found, and it is not disputed, that the stock sold was the stock of Hadley and not Thorne's nor the corporation's. The majority have *inferred* from the evidence quoted that the money went into the coffers of the corporation and thereby benefitted Thorne. There is no evidence to sustain that except by inference, and even if it were true, it might have been a loan to the corporation which, to my view, would be different than a sale of the corporation's stock. Regardless of what it was there is no evidence to sustain these words by the majority opinion: "* * * there can be no doubt that this was an investment in the company and that the money paid by plaintiff went into the coffers of the corporation * * *."

It is too well known to need citations that this court is not a fact-finding body. In this case no assignment of error was directed to the incorrectness of the trial court's findings of fact. In such a case the findings are deemed conclusive. With no finding that the money went into the corporation's coffers, and no evidence to sustain such a finding except by inference, which the trial court is not bound to so

infer, this court should not disturb the decision on the basis of its previous rulings. See Valley Nat. Bank of Phoenix v. Carrow, 71 Ariz. 87, 223 P.2d 912.